2009 OK CIV APP 94

**Tyson GIRDNER, Plaintiff/Appellant,**

v.

**BOARD OF COMMISSIONERS of Cherokee County, Defendant/Appellee.**

No. 106,295.

Court of Civil Appeals of Oklahoma, Division No. 2.

Oct. 20, 2009.

Monte W. Strout, Tahlequah, OK, for Appellant.

Chris J. Collins, Andy Artus, Collins, Zorn & Wagner, P.C., Oklahoma City, OK, for Appellee.

DEBORAH B. BARNES, Presiding Judge.

¶ 1 Under the accelerated procedure for orders granting motions to dismiss,[1] Tyson

Girdner (Girdner) appeals the trial court's Journal Entry of Judgment, filed on September 4, 2008. Girdner claims it was error for the trial court to grant the Board of County Commissioners of Cherokee County's (Board) motion to dismiss Girdner's Third Amended Petition with prejudice. We find the trial court correctly granted the motion to dismiss, but incorrectly dismissed the case with prejudice. Accordingly, we affirm in part, reverse in part, and remand with instructions.

¶ 2 Girdner filed a Petition on October 6, 2005, naming "Cherokee County ex rel., Cherokee, County Sheriff's Office" as the defendant. Girdner alleged that on September 21, 2004, he was pulled over by Cherokee County Sheriff's Deputy David Tate (Tate), at which time Tate allegedly beat Girdner with his baton, without legal justification, causing serious injuries that required surgery to repair. Girdner alleged that the action arose from the "tortuous [sic] acts of Deputy David Tate, acting in his official capacity under color of law which were unwarranted, illegal acts of assault and battery upon the Plaintiff.... "[2] Girdner prayed to recover damages for medical services, disability, disfigurement, lost wages, pain, suffering, and "the costs of defense of the frivolous actions pressed by Tate to cover his illegal acts which were disposed of in favor of the Plaintiff."

¶ 3 On October 26, 2005, the Sheriff's Office specially appeared and moved to dismiss the Petition on the grounds that it is not an entity capable of being sued. The next day, on October 27, 2005, Girdner filed his First Amended Petition, naming "Board of County Commissioners of Cherokee County" as the defendant,[3] instead of the Sheriff's Office.

---

1. Rule 1.36, Okla. Sup.Ct. Rules, 12 O.S. Supp. 2004, ch. 15, app. 1.

2. The Cherokee County District Attorney filed charges against Girdner on September 24, 2004, in connection with the September 21, 2004, incident, for assault and battery on a peace officer and one count of D.U.I. Girdner was bound over based on a judicial determination of probable cause at his preliminary hearing on March 16,

2005, but the district attorney dismissed the case by court order, filed on June 2, 2005.

3. "In all suits or proceedings by or against a county, the name in which a county shall sue or be sued shall be, 'Board of County Commissioners of the County of _____,' but this provision shall not prevent county officers, where authorized by law, from suing in their official name for the benefit of the county." 19 O.S.2001 § 4.

In all other respects, the First Amended Petition was identical to the original Petition.

¶4 On January 5, 2006, Board filed its Answer to the First Amended Petition, denying the tort allegations and asserting various affirmative defenses. Board conducted discovery, including deposing Girdner.

¶5 On May 30, 2008, Board filed its Motion for Summary Judgment, arguing that it was immune from liability for assault, battery, and malicious prosecution under the Oklahoma Governmental Tort Claims Act (GTCA)[4] and that any false arrest claim that might be construed to be included in the First Amended Petition should fail because probable cause is a defense.

¶6 Girdner responded on June 16, 2008, requesting summary judgment be denied. Girdner asserted in his summary judgment response brief that, in addition to the assault and battery allegations in his first two petitions, he also "intends to prove negligent training, hiring" by Board and thus summary judgment should be denied. Girdner made this statement despite the fact he had not included any negligent training and hiring claim in his original or First Amended Petition. Girdner claims that Board should have addressed these negligence claims in its Motion for Summary Judgment because Girdner had sent Board a draft of a proposed pretrial order on March 25, 2008, that listed "negligence" as his first ground of recovery.[5]

¶7 On June 17, 2008, Girdner filed his "Supplemental Response to Defendant's Motion for Summary Judgment: Request for Leave to Amend Petition." In this request for leave to amend, made over two-and-a-half years after the First Amended Petition was filed on October 27, 2005, Girdner admits the word "negligence" does not appear in the First Amended Petition. As an exhibit to his Supplemental Response brief, Girdner attached his proposed Second Amended Petition. In the proposed Second Amended Petition, Girdner added Tate as a party defendant and alleged, in addition to the previous assault and battery allegations, that Tate was negligently trained and hired by Board. The proposed Second Amended Petition, however, did not name Board as a defendant, but instead, once again, erroneously named "Cherokee County, ex rel., Cherokee, County Sheriff's Office" as defendant, just as Girdner had done in his original Petition.

¶8 On June 25, 2008, the trial court denied Board's Motion for Summary Judgment and granted Plaintiff leave to "file amended petition" within 20 days. Board filed its "Reply and Objection to Plaintiff's Supplemental Response to Defendant's Motion for Summary Judgment" on June 26, 2008. In this Reply, Board objected to any leave to file an amendment, asserting the proposed Second Amended Petition once again named the Sheriff's Office instead of Board and that Girdner's claims are barred by the statute of limitations. Girdner filed the Second Amended Petition on July 1, 2008.

¶9 On July 21, 2008, the Sheriff's Office made a special appearance and moved to dismiss the Second Amended Petition. The Sheriff's Office argued that it was not a proper party defendant and that the statute of limitations bars Girdner's claims.

¶10 Instead of filing a brief in response to the Sheriff's Office's Motion to Dismiss, on July 23, 2008, in an attempt to correct the misnaming of the government defendant, Girdner filed, without requesting or receiving leave of court, his Third Amended Petition, identical to the Second Amended Petition, except naming Board, instead of the Sheriff's Office, as party defendant.[6]

¶11 Named as a defendant once again, Board filed its "Motion to Dismiss Plaintiff's Third Amended Petition" on July 31, 2008. Board urged the trial court not to consider the pleading, filed without leave of court. Board also asserted that, in any event, Gird-

---

4. 51 O.S.2001 § 151 *et seq.*, as amended.

5. Board has refused to sign the proposed pretrial order for the very reason that it included the negligence claims not pleaded by Girdner in the Petition or the First Amended Petition.

6. On July 30, 2008, defendant Tate filed a motion to dismiss and was dismissed without prejudice by an order filed on August 7, 2008.

ner's claims were barred by the statute of limitations.

¶ 12 On August 11, 2008, Girdner filed his Response to Board's Motion to Dismiss, alleging his Third Amended Petition should be allowed because it was merely correcting a scrivener's error. Girdner asserted that he had corrected his Petition in the First Amended Petition to name Board instead of the Sheriff's Office and that the original Petition caption heading was erroneously placed on the Second Amended Petition. Girdner did not address Board's assertion that his claims were barred by the statute of limitations.

¶ 13 In no version of Girdner's Petition does he factually allege that he gave timely notice of his claim for damages for his alleged injuries under the GTCA and timely commenced his lawsuit after denial. The remainder of the record does not contain this information, either. In the Journal Entry of Judgment filed on September 4, 2008, the trial court granted Board's Motion to Dismiss and dismissed the case with prejudice. It is from that judgment that Girdner appeals.

## STANDARD OF REVIEW

 ¶ 14 In reviewing a motion to dismiss, an appellate court, like a trial court, is required to take as true all of the challenged pleading's allegations, together with all reasonable inferences drawn from them. *Tuffy's, Inc. v. City of Oklahoma City*, 2009 OK 4, 212 P.3d 1158. The standard of review for an order dismissing a case for failure to state a claim upon which relief can be granted is *de novo* and involves consideration of whether a plaintiff's petition is legally sufficient. *Fanning v. Brown*, 2004 OK 7, 85 P.3d 841. A motion to dismiss cannot be sustained "unless it should appear without doubt that the plaintiff can prove no set of facts in support of the claim for relief." *Miller v. Miller*, 1998 OK 24, ¶ 15, 956 P.2d 887, 894. (Footnote omitted.)

## ANALYSIS

¶ 15 Oklahoma has adopted the doctrine of sovereign immunity. The GTCA sets forth this doctrine, stating, "[t]he state, its political subdivisions, and all of their employees acting within the scope of their employment, whether performing governmental or proprietary functions, shall be immune from liability for torts." 51 O.S.2001 § 152.1(A). The GTCA waives that immunity only to the extent and in the manner provided for in the GTCA. 51 O.S.2001 § 152.1(B).

¶ 16 Title 51 O.S.2001 § 153(A) provides as follows:

A. The state or a political subdivision shall be liable for loss resulting from its torts or the torts of its employees acting within the scope of their employment subject to the limitations and exceptions specified in this act and only where the state or political subdivision, if a private person or entity, would be liable for money damages under the laws of this state . . . .

The GTCA is the exclusive remedy by which an injured plaintiff may recover in tort against a governmental entity in this state. 51 O.S.2001 § 153(B); *Tuffy's, Inc. v. City of Oklahoma City*, at ¶ 7, 212 P.3d at 1163.

¶ 17 Under sections 156 and 157 of the GTCA, suits authorized by the GTCA may only be maintained if valid notice of a claim has been given to the governmental subdivision within one year of the tort injury, and if the action is commenced within 180 days after denial of the claim. Title 51 O.S. Supp. 2003 § 156 provides, in pertinent part, as follows:

A. Any person having a claim against the state or a political subdivision within the scope of Section 151 et seq. of this title shall present a claim to the state or political subdivision for any appropriate relief including the award of money damages.

B. Except as provided in subsection H of this section, claims against the state or a political subdivision are to be presented within one (1) year of the date the loss occurs. A claim against the state or a political subdivision shall be forever barred unless notice thereof is presented within one (1) year after the loss occurs.

. . . .

D. A claim against a political subdivision shall be in writing and filed with the office of the clerk of the governing body.

¶ 18 Further, 51 O.S.2001 § 157 provides:

A. A person may not initiate a suit against the state or a political subdivision unless the claim has been denied in whole or in part. A claim is deemed denied if the state or political subdivision fails to approve the claim in its entirety within ninety (90) days, unless the state or political subdivision has denied the claim or reached a settlement with the claimant before the expiration of that period. If the state or a political subdivision approves or denies the claim in ninety (90) days or less, the state or political subdivision shall give notice within five (5) days of such action to the claimant at the address listed in the claim. If the state or political subdivision fails to give the notice required by this subsection, the period for commencement of an action in subsection B of this section shall not begin until the expiration of the ninety-day period for approval. The claimant and the state or political subdivision may continue attempts to settle a claim, however, settlement negotiations do not extend the date of denial unless agreed to in writing by the claimant and the state or political subdivision.

B. *No action for any cause arising under this act, Section 151 et seq. of this title, shall be maintained unless valid notice has been given and the action is commenced within one hundred eighty (180) days after the denial of the claim as set forth in this section....*

(Emphasis added.)

¶ 19 Notice and timely commencement of suit are conditions precedent to the right to pursue judgment against a political subdivision. *Johns v. Wynnewood School Board of Education,* 1982 OK 101, 656 P.2d 248. Compliance with these provisions must be alleged by a claimant in the petition. "The petition must factually allege either actual or substantial compliance with the notice provisions of the [GTCA]." *Mansell v. City of*

*Lawton,* 1995 OK 81, 901 P.2d 826, n. 2. (Citation omitted.)

¶ 20 Neither Girdner's Petition nor any subsequent amendment or attempt to amend the Petition factually alleged either actual or substantial compliance with the pre-lawsuit written notice of claim provisions of the GTCA. Title 12 O.S.2001 § 2008(A)(1) requires that a plaintiff's pleading setting forth a claim contain a "short and plain statement of the claim showing that the pleader is *entitled* to relief[.]" (Emphasis added.) A motion to dismiss "tests a pleading's sufficiency to support a legally cognizable claim...." *Darrow v. Integris Health, Inc.,* 2008 OK 1, 176 P.3d 1204, 1209, n. 17. Compliance with the written notice of claim and denial of the claim provisions under the GTCA are prerequisites to the State's (or political subdivision's) consent to be sued and to the exercise of judicial power to remedy the alleged tortious wrong by the government. *Cruse v. Board of County Commissioners of Atoka County,* 1995 OK 143, ¶¶ 16–18, 910 P.2d 998, 1004–1005. The incident occurred on September 21, 2004, and the time to file a written notice of any claim arising from the incident was within one year.[7] Such pre-lawsuit notice of claim, followed by a timely commencement of suit by Girdner within 180 days after the claim is denied by Board (or deemed denied by operation of law under § 157(A)), was required to be specifically pled by Girdner in his Petition to invoke the power of the trial court to enforce an alleged tort claim against Board. *Id.* Girdner has failed to allege sufficient facts showing compliance with the GTCA's pre-lawsuit requirements under the § 2008(A)(1) notice pleading requirements to withstand a motion to dismiss.

¶ 21 In *Willborn v. City of Tulsa,* 1986 OK 44, 721 P.2d 803, the Oklahoma Supreme Court considered an appeal from the sustaining of a demurrer to the appellant's petition. The appellant had filed an action, alleging injuries resulting from the tortious actions of police officers during his arrest. The trial court dismissed his tort claims with prejudice[8] for failure to comply substantially with

---

7. 51 O.S. Supp.2003 § 156(B).

8. Willborn had conceded he had not made any attempt to comply with the tort claims act notice

the Political Subdivision Tort Claims Act.[9] The Court found Willborn's petition to be "facially flawed" in that he did not allege valid notice of his tort claim and timely commencement after denial pursuant to the Act.

¶ 22 Likewise, in *Lucas v. Independent Public School District No. 35 of Holdenville,* 1983 OK 121, 674 P.2d 1131, the Oklahoma Supreme Court considered another appeal from a sustained demurrer to a petition in a negligence action brought under the Political Subdivision Tort Claims Act. The trial court had dismissed the petition "for failure to allege facts sufficient to show compliance with the requirement of 51 O.S. § 156." *Id.* at ¶ 1, 674 P.2d at 1132. The Court noted that "[i]t is undisputed that appellant failed to give the 'clerk of the governing body' written notice" within the required time period after the injury occurred. *Id.* at ¶ 4, 674 P.2d at 1132. The Court affirmed the trial court's dismissal, stating that the claim was "barred by the statute of limitations." *Id.* at ¶ 11, 674 P.2d at 1134.

¶ 23 Girdner did not allege the specific facts necessary to invoke the power of the trial court to remedy the alleged tortious wrong by Board.[10] Because Girdner's Petitions (and the remainder of the record) are silent as to whether he, in fact, followed the notice provisions of the GTCA and timely filed his Petition after a denial of the claim, we find the trial court's order of dismissal with prejudice should be affirmed in part,

reversed in part, and remanded with instructions.

## CONCLUSION

¶ 24 Upon review of the record and applicable law, we find the trial court's September 4, 2008, order of dismissal should be, and hereby is, affirmed in part as to the granting of the motion to dismiss, but reversed in part as to dismissal with prejudice, and remanded to the trial court to ascertain under 12 O.S. Supp.2004 § 2012(G) whether Girdner can remedy the defect regarding failure to plead compliance with the GTCA.

¶ 25 **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.**

WISEMAN, V.C.J., and GOODMAN, J., concur.

---

requirements and that he filed his lawsuit six months out of time; thus, the dismissal with prejudice was proper. In the instant case, however, there is no concession. Girdner's Petition and amended versions and the record are silent as to whether Girdner filed a timely written notice of claim and then timely filed his Petition after a denial of the claim.

9. The Political Subdivision Tort Claims Act was renamed the Governmental Tort Claims Act in 1984.

10. *See also State of Oklahoma ex rel. State Insurance Fund v. JOA, Inc.,* 2003 OK 82, 78 P.3d 534 ("The concept of sovereign immunity has characteristics both consistent and inconsistent with general principles of subject matter jurisdiction. Common law sovereign immunity is similar to subject matter jurisdiction in that immunity acts to bar a court from adjudicating a particular class of causes of action.") *Id.* at n. 5. "We need not decide whether ... sovereign immunity ... coincides perfectly with the contours of subject

matter jurisdiction. For the purpose of our analysis we treat the ... sovereign immunity argument as challenging the trial court's power to act." *Id.* at ¶ 7, 78 P.3d at 536–537 (footnotes omitted); *Shanbour v. Hollingsworth,* 1996 OK 67, ¶ 7, 918 P.2d 73, 75 (when the legislature consented to judicial enforcement of tort claims, the procedural requirements of §§ 156–157 were narrowly structured and require compliance with the written notice of claim and denial of claim provisions. Judicial power is invoked by the timely filing of the governmental tort claim, and the expiration of the time period in § 157(B) operates to bar judicial enforcement of the claim against the government to which the legislature waived sovereign immunity); *State of Oklahoma v. Dixon,* 1996 OK 15, 912 P.2d 842 (pre-lawsuit notice of a claim that complies with the provisions of the GTCA is necessary to invoke the power of the trial court to enforce a governmental tort claims action).